IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACKIE L. W.,                       )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        1:22CV117
                                    )
LELAND DUDEK,                       )
Acting Commissioner of Social Security, )
                                    )
                    Defendant.      )

MEMORANDUM ORDER AND OPINION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jackie L. W. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The Parties filed cross-motions for judgment, and the administrative record has been certified to the Court for review. At the Court's direction [Doc. #19], the Parties filed supplemental briefing on whether the Administrative Law Judge ("ALJ") (1) failed to properly account for treating physician Dr. Rachel Schultz's medical opinion and failed to properly account for certain objective medical evidence that would appear to support that opinion, and (2) failed to fully develop the record, including in particular as to the opinion of Dr. Schultz, the treatment records from Dr. Schultz prior to the opinion in July 2020, and the records related to the ordering of a CT scan in May 2020.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on November 16, 2017, alleging a disability onset date of June 17, 2013 in both applications. (Tr. at 20, 243-55.)[1] His applications were denied initially (Tr. at 68-105, 149-53) and upon reconsideration (Tr. at 106-48, 159-68). Thereafter, Plaintiff requested an administrative hearing de novo before an ALJ. (Tr. at 169-83.) On March 30, 2021, both Plaintiff and an impartial vocational expert testified at the subsequent telephone hearing. (Tr. at 20.) Although Plaintiff was informed of his right to representation, Plaintiff chose to appear and testify at the hearing without a representative. (Tr. at 20.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30), and, on December 8, 2021, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC').". Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 23.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the spine, depression, cannabis dependence, opioid abuse and anxiety[.]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

(Tr. at 23.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 23-25.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] can frequently climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, [and] crouch; he cannot crawl; he can frequently push and/or pull with the bilateral upper extremities; he is limited to no more than occasional exposure to extreme vibration and workplace hazards; he can sit/stand hourly on task; he is limited to unskilled work of a routine repetitive nature, which is further defined as a reasoning level of 1-2, in two hour segments; he is limited to a non-production pace, such as a non-automated/conveyor pacing; he is limited to infrequent changes in the work setting; he is limited to occasional public interaction; he is limited to frequent interaction with supervisors and coworkers; he is limited to no teamwork/tandem work in the work setting.

(Tr. at 25.) At step four of the analysis, the ALJ determined that the exertional demands of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 28.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the VE regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 29-30.)

Plaintiff now challenges the ALJ's assessment of the medical opinion evidence in formulating his RFC. First, Plaintiff asserts that "[t]he ALJ erred by failing to account for medical evidence of record that supports Dr. Rachel Schultz'[s] opinion, preventing the decision from being supported by substantial evidence." (Pl.'s Br. [Doc. #13] at 5; Pl.'s Supp. Br. [Doc. #21] at 1-2.) Second, Plaintiff contends that the ALJ erred in two respects when considering the opinion of the consultative examiner, Dr. Peter Morris. Specifically, Plaintiff argues that the ALJ (1) "erred by failing to adopt RFC limitations to account for [Dr. Morris']

6

opinion that [Plaintiff] was limited to standing four hours, despite finding Dr. Morris' opinion persuasive" (Pl.'s Br. at 15), and (2) erred by misstating Dr. Morris' clinical examination findings (Pl.'s Br. at 19). After a thorough review of the record, the Court finds that remand is required with respect to the analysis of Dr. Schultz's opinion and the evidence supporting that opinion, as further set out below.

With respect to Dr. Schultz's opinion, Plaintiff argues that the ALJ mischaracterized or otherwise failed to address the medical evidence in the record, and failed to fully consider evidence supporting Dr. Schultz's opinion. As the Court noted in its Order requesting supplemental briefing [Doc. #19], Dr. Schultz issued the following medical source statement: on July 27, 2020:

> [Plaintiff] is under my care at Wake Forest Family Medicine. [Plaintiff] has severe spinal narrowing causing him significant pain and weakness. It is my opinion that he is at risk of permanent paralysis or other neurological deficits if he continues to work in any position which has him doing manual labor or sitting/standing for extended periods of time.

(Tr. at 665.) The ALJ considered Dr. Schultz's statement, but found that

> the medical source statement from Dr. Rachel Marie Schul[t]z is not persuasive, since it is not even remotely substantiated by the above-mentioned medical evidence of record. There is no logical bridge between [Plaintiff's] above-mentioned treatment records and Dr. Schultz's statement. Specifically, although [Plaintiff's] reports of pain are well documented, the objective findings, including [Plaintiff's] motor strength and <u>absence of any objective evidence of significant nerve root involvement</u>, do not support a finding that [Plaintiff] is at risk of permanent paralysis or other neurological deficits if he continues to work in any position which has him doing manual labor or sitting/standing for extended periods of time.

(Tr. at 28) (emphasis added). The record also includes a May 2020 CT scan, just a few weeks prior to Dr. Schultz's July 2020 opinion. That May 2020 CT found, among other things, "left posterior paracentral disc bulging at L5-S1 causing extrinsic compression on the S1 nerve roots

7

bilaterally, greater on the left. There is no significant spinal stenosis." (Tr. at 664, 667). Plaintiff contends that the CT scan provided objective evidence of significant nerve root involvement, supporting Dr. Schultz's opinion. Plaintiff also points to the consultative examination, which included positive straight leg raising tests, as providing additional objective evidence of nerve root involvement. (Tr. at 583.) Plaintiff contends that the ALJ incorrectly cited an "absence of any objective evidence of significant nerve root involvement" and failed to consider the evidence which formed part of Dr. Schultz's treatment.

Under the applicable regulations for claims filed on or after March 27, 2017, like the claims in this case,

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .
>
> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . . [and] (v) Examining relationship. . . .
>
> (4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to

> become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) <u>Other factors</u>. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a) and (c). The regulations also require decision-makers to "articulate in . . . [their] decisions how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), 404.1520c(c)(1)-(c)(2).

In the present case, in rejecting Dr. Schultz's opinion that Plaintiff's severe spinal impairment rendered him unable to work and at risk for paralysis with extended standing or sitting (Tr. at 665), the ALJ stated that the entire record showed an "absence of <u>any</u> objective evidence of significant <u>nerve root involvement</u>," (Tr. at 28) (emphases added). Yet, the CT scan results revealed "left posterior paracentral disc bulging at L5-S1 causing extrinsic compression on the S1 nerve roots bilaterally, greater on the left." (Tr. at 664, 667). The ALJ's decision does not address this CT finding or explain how this extrinsic compression on the nerve roots fails to provide even some evidence of nerve root involvement. Because the ALJ did not address or discuss the CT scan findings of "extrinsic compression on the S1 nerve roots bilaterally" (Tr. at 664), and because the CT scan is inconsistent with the ALJ's

9

assertion of an "absence of any objective evidence of significant nerve root involvement," the Court cannot follow the ALJ's reasoning, and the Court is left to conclude that the ALJ did not adequately consider this part of the record.[4] As the Fourth Circuit has stated:

> The ALJ's conclusion that the lack of substantial support from the other objective evidence of record rendered [the] opinion less persuasive, was erroneous for multiple reasons. To start, it is vague and conclusory, as the ALJ did not specify what objective evidence he was referring to. The ALJ's cursory explanation fell far short of his obligation to provide a narrative discussion of how the evidence supported his conclusion, and as such, the analysis is incomplete and precludes meaningful review.

Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 106 (4th Cir. 2020) (internal brackets and quotations omitted); see also Artis v. Berryhill, No. 5:17-CV-387-FL, 2018 WL 3622779, at *5 (E.D.N.C. July 30, 2018) (remanding for ALJ to fill in gaps in reasoning where medical records provided conflicting evidence which the ALJ failed to explain and which ALJ did not consider "beyond a brief but partial summary of the results" of some of the medical records).

In the Supplemental Brief, Defendant notes that the ALJ cited to the document in which the CT scan results are found. (Def.'s Supp. Br. [Doc. #20] at 1) (citing Tr. 26, 27, 28). In the general discussion, the ALJ did note that "[r]adiologic studies evidence the claimant's degenerative joint disease of the cervical and lumbar spine (Exhibits 6F and 11F)," (Tr. at 26), but the ALJ did not discuss or address the CT scan results reflecting "extrinsic compression on the S1 nerve roots bilaterally," (Tr. at 664). Defendant argues that this Court should take the ALJ at his word that he considered the whole record, including these results. (Def.'s Supp. Br. at 1) (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However,

---

[4] In addition, as noted by Plaintiff, the Consultative Examination reflects positive straight leg raising tests, with pain in both the seated and supine positions. (Tr. at 583.) Plaintiff notes that this is also objective evidence of nerve root involvement, contrary to the ALJ's assertion.

10

even taking the ALJ at his word that he considered the document in which these results appeared, the ALJ apparently misstated what these results reflected and did not explain how these results were inconsistent with Dr. Schultz's opinion.

Defendant also contends that because the CT scan showed no fractures and "no significant spinal stenosis," the ALJ's statement that the record lacked any evidence of significant nerve root involvement was well-supported. However, to accept Defendant's argument, the Court would have to conclude, on its own and without medical support or a finding by the ALJ, that "no significant spinal stenosis" and "no fractures" necessarily means no nerve root involvement, and that "extrinsic compression on the S1 nerve roots bilaterally" does not reflect any nerve root involvement. In addition to the fact that it would be inappropriate for the Court to make such a medical determination in reviewing the decision of the ALJ, it is not clear that "spinal stenosis" and "nerve root involvement" are interchangeable such that a finding regarding spinal stenosis would resolve or address the evidence of extrinsic compression on the nerve roots bilaterally. Most importantly, the ALJ, and not this Court, is the one to make that determination.

Defendant also cites to other evidence supporting the ALJ's decision, including Plaintiff's daily activities. However, while the ALJ could certainly have made those types of findings in evaluating the opinion evidence, the Court cannot rely on findings that the ALJ did not make. As noted in <u>Anderson v. Colvin</u>, this Court's

> [r]eview of the ALJ's ruling is limited further by the so-called "<u>Chenery</u> Doctrine," which prohibits courts from considering *post hoc* rationalizations in defense of administrative agency decisions. Under the doctrine, a reviewing court "must judge the propriety of agency action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is

11

Case 1:22-cv-00117-JEP   Document 22   Filed 04/16/25   Page 11 of 14

> powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (internal citations, brackets, and quotations omitted) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). Thus, to the extent that Defendant provides various reasons for discounting Dr. Schultz's statements and the CT scan results, the Court cannot rely on this new or different reasoning to support the ALJ's conclusions.[5]

Ultimately, the most important factors in evaluating opinion evidence are supportability and consistency, as discussed above, and the ALJ found Dr. Schultz's opinion unsupported by the objective evidence, but the ALJ failed to address the objective imaging evidence in the May 2020 CT scan that supported the opinion. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (internal quotation omitted)); Arakas, 983 F.3d at 98 (finding that the ALJ's decision was "unsupported by substantial evidence" where

---

[5] The Court also notes that in rejecting Dr. Schultz's opinion, the ALJ relied on "the absence of objective evidence of nerve root involvement" in the treatment records, but it appears that treatment records from Dr. Schultz are missing, as noted in the Court's prior Order, in addition to the failure to address the CT scan discussed above. As discussed in the prior Order, Plaintiff testified that he injured his back in the spring/summer of 2020 (Tr. at 49), and it appears that the CT scan was ordered in May 2020. The circumstances regarding the CT scan in May 2020 are unclear, but Plaintiff must have seen someone who then ordered the CT scan. Notably, there are no such treatment records included in the administrative record. Indeed, there are no treatment records from June 2019 to March 2021, even though Plaintiff specifically informed SSA that he saw Dr. Schultz on July 7, 2020 (Tr. at 371). As noted in the Court's prior Order, there appear to be missing medical records from Dr. Schultz, raising questions regarding the completeness of the record, particularly given Plaintiff's *pro se* status during the administrative process. Defendant contends that the ALJ was not obligated to search out evidence on Plaintiff's behalf. However, Plaintiff identified these providers, completed the release forms, and identified at least one specific visit with Dr. Schultz in July 2020, but it appears that the SSA's records requests to that provider did not include this time period. This issue directly relates to and arises out of Plaintiff's contention that the ALJ failed to properly account for Dr. Schultz's opinion and failed to properly account for the medical evidence that would support that opinion.

"the ALJ erred by [ ] selectively citing evidence from the record"). The Court notes that this is not a case where the ALJ evaluated the evidence and explained why a treatment record was less persuasive. This is also not a case where the ALJ addressed a treatment record but did not separately address multiple instances of the same or similar result. This is not even a case where the ALJ considered the substance of a treatment record but failed to address it again later in analyzing the opinion evidence. Instead, this is a case where the ALJ failed to address an imaging result that included apparent support for a treating physician's opinion, with imaging results, and that provided objective support for Plaintiff's claim. Moreover, not only did the ALJ fail to address this evidence, the ALJ's reasoning in rejecting the opinion of Dr. Schultz was based on an apparent belief that the record was entirely devoid of the very type of information this imaging record in fact contained. In the absence of any evaluation of that evidence by the ALJ, the Court cannot follow the reasoning of the ALJ, and remand is required.[6]

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for proceedings consistent with this Order. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #16] is DENIED, and Plaintiff's Motion for Judgment on

---

[6] In light of this remand, the Court need not address Plaintiff's additional arguments regarding the ALJ's evaluation of the opinion of the Consultative Examiner, as all of the issues and evidence will be before the ALJ for further consideration on remand.

the Pleadings [Doc. #12] is GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it is DENIED.

This, the 16th day of April, 2025.

Joi Elizabeth Peake
United States Magistrate Judge